
FILED

August 12, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 10:43 AM



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **TIMOTHY WAYNE NEWELL,** | ) | **Docket No.: 2015-05-0091** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 88987-2014** |
| **METRO CARPETS, LLC,** | ) | |
| **Employer,** | ) | |
| **And** | ) | |
| **AUTO OWNERS INSURANCE,** | ) | |
| **Insurer/TPA.** | ) | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

This matter came before the undersigned workers' compensation judge on August 9, 2016, on the Request for Expedited Hearing filed by the employee, Timothy Newell, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is whether Mr. Newell is entitled to additional medical treatment for his left shoulder injury. The central legal issue is whether the evidence is sufficient for the Court to determine that Mr. Newell is likely to establish at a hearing on the merits that Metro Carpets must provide a replacement for his authorized treating physician (ATP). For the reasons set forth below, the Court holds Mr. Newell is likely to prevail at a hearing and is entitled to continuing medical treatment for his left shoulder injury.[1]

### History of Claim

The parties established the following facts at the Expedited Hearing. Mr. Newell was working for Metro Carpets on November 10, 2014, when he fell from his truck. He alleged injuries to his back, left knee, and left shoulder. Metro Carpet accepted the claim as compensable and provided a panel from which Mr. Newell selected Dr. Blake Garside as his ATP for the knee and shoulder injuries. (Ex. 2.)

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

Mr. Newell testified Dr. Garside performed surgery on his left shoulder, but it did not relieve his pain. He testified he continues to have pain, but no new symptoms or any additional injuries. Mr. Newell felt Dr. Garside behaved unprofessionally; namely, he was vague and dismissive, and refused to answer Mr. Newell's questions. As a result, Mr. Newell posted uncomplimentary and critical comments about Dr. Garside on social media.

On cross-examination, Mr. Newell was questioned about a prior left knee injury. He acknowledged suffering a previous knee injury that required surgery. Further, that injury resulted in a personal injury settlement of $160,000.00 in 2006. Mr. Newell also acknowledged he denied any prior knee problems when he began treating with Dr. Garside.

Dr. Garside treated Mr. Newell until October 13, 2015, at which time he placed him at maximum medical improvement (MMI) and released him to regular duty. He opined the left shoulder injury arose primarily out of and in course and scope of Mr. Newell's work for Metro Carpets. (Ex. 1.) Referring to the prior knee injury and surgery, Dr. Garside also stated in his affidavit that Mr. Newell's left knee condition did not arise primarily from his November 10, 2014 work injury. *Id*.

In his August 3, 2016 record, Dr. Garside stated he last saw Mr. Newell on October 13, 2015. Noting that Mr. Newell initially denied any preexisting knee injury, Dr. Garside's subsequent review of his medical records confirmed "prior knee surgery, permanent restrictions, and previous impairment rating." As a result, Dr. Garside stated, "I do not feel an objective doctor/patient relationship is possible, and I am therefore declining to see him for reevaluation." (Ex. 4.)[2]

Mr. Newell filed two Petitions for Benefit Determination seeking temporary disability and medical benefits. The Mediating Specialist filed a Dispute Certification Notice, and Mr. Newell filed a Request for Expedited Hearing.

At the Expedited Hearing, Mr. Newell asserted Dr. Garside's refusal to treat him entitles him to a new ATP because Metro Carpets does not dispute compensability of the left shoulder injury. Further, Mr. Newell denied his conduct constituted noncompliance and, even if it did, the Workers' Compensation Law does not authorize termination of medical treatment for noncompliance.

---

[2] Mr. Newell objected to the admissibility of Dr. Garside's August 3, 2016 note, as it was not signed or verified and because Metro Carpets failed to file it with the Court at least ten days before the hearing. The Court took the objection under advisement and allowed Metro Carpets an opportunity to file a certified copy of the note, which it did later on the same day. Because Metro Carpets only received the note on the Friday before the hearing, the Court now overrules the objection, finding that Metro Carpets demonstrated good cause for failing to file the note earlier. *See* Tenn. Comp. R. & Regs. 0800-02-21-.16(6)(a) (2015).

Metro Carpets countered that Mr. Newell is not entitled to any additional medical treatment. It contended he made material misrepresentations to Dr. Garside about his medical history. This raised significant questions about the compensability of his left knee claim, long after Metro Carpets provided a substantial amount of medical treatment. When coupled with Mr. Newell's online attacks of Dr. Garside, Metro Carpets contended Mr. Newell's non-disclosure of his prior injury constituted noncompliance that caused Dr. Garside to stop treating him. Metro Carpets argued allowing a claimant to sabotage a doctor/patient relationship in order to "get a new bite at the apple" of compensability is contrary to public policy because it would undermine an employer's statutory right to control medical treatment.

**Findings of Fact and Conclusions of Law**

The following legal principles govern this case. Because this case is in a posture of an Expedited Hearing, Mr. Newell need not prove every element of his/her claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1)(2015).

To prove a compensable injury, Mr. Newell must show that his alleged injury arose primarily out of and in the course and scope of his employment. Tenn. Code Ann. § 50-6-102(14) (2015). In order to do so, he must show, "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015).

Applying these principles to the facts of this case, the Court first notes that Dr. Garside specifically stated Mr. Newell's left shoulder injury arose primarily out of and in course and scope of his work. Though Metro Carpets questioned whether Mr. Newell's weight lifting or work activities might have resulted in a new injury, it provided no medical opinion in support of this speculation. Therefore, based upon Dr. Garside's unrebutted opinion, the Court finds Mr. Newell appears likely to establish compensability of his left shoulder claim at a hearing on the merits.

Having established he is likely to prove a compensable left shoulder injury, Mr. Newell is entitled to medical treatment for that injury. Under the Workers' Compensation Law, "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2015). "The injured employee shall accept the medical benefits. . . provided that in any case when the employee has suffered an injury and expressed a need for medical care, the employer shall designate a group of

three (3) or more independent reputable physicians. . . from which the employee shall select one (1) to be the treating physician." Tenn. Code Ann. § 50-6-204(a)(3)(A)(i) (2015).

The only statutory exception to the requirement to provide medical treatment is Tennessee Code Annotated section 50-6-204(d)(8) (2015), which provides:

> If the injured employee refuses to comply with any reasonable request for examination or to accept the medical or specialized medical services that the employer is required to furnish under this chapter, the injured employee's right to compensation shall be suspended and no compensation shall be due and payable while the injured employee continues to refuse.

Metro Carpets presented no evidence that Mr. Newell refused to comply with any request for examination or refused to accept medical services. As a result, neither his admitted misrepresentation to Dr. Garside – whether intentional or not – nor his online behavior constitute statutory noncompliance.

As for its public policy argument, Metro Carpets provided no legal authority in support of the proposition that a deteriorating doctor/patient relationship somehow terminates an employee's right to medical treatment under section 204. A careful review of Tennessee case law reveals no such exception to an employer's duty to provide medical treatment. Creating a new exception is the province of the appellate courts, or the Legislature; thus, this Court declines to do so. Even if there were legal authority supporting Metro Carpets' position, there is no evidence Mr. Newell intentionally sabotaged his relationship with Dr. Garside. Instead, it appears the online behavior and the misrepresentation occurred early in the doctor/patient relationship. Even so, Dr. Garside continued to treat Mr. Newell until after he reached MMI.

Based on the foregoing, the Court finds Mr. Newell is likely to prevail at a hearing on the limited issue of whether he is entitled to a new ATP for his left shoulder injury.

**IT IS, THEREFORE, ORDERED** as follows:

1. Metro Carpets or its workers' compensation carrier shall provide Mr. Newell with medical treatment for his November 10, 2014 left shoulder injury as required by Tennessee Code Annotated section 50-6-204 (2015), to be initiated by Metro Carpets or its workers' compensation carrier providing Mr. Newell with a new panel of orthopedic specialists or a substitute for Dr. Garside on the original panel. Medical bills shall be furnished to Metro Carpets or its workers' compensation carrier by Mr. Newell or the medical providers.

2. This matter is set for an Initial (Scheduling) Hearing on September 22, 2016, at 9:00 a.m.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 12th day of August, 2016.**

_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Dale Tipps, Court of Workers' Compensation Claims. You must call 615-741-2112 or toll free at 855-874-0473 to participate.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

5

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:
1. Affidavit of Dr. William Garside
2. C-42 Physician Panel dated November 25, 2014
3. Affidavit of Dr. Robert Clendenin
4. Dr. Garside's August 3, 2016 Note to Chart

Technical record:[3]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

---

[3] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 12th day of August, 2016.

| Name | Certified Mail | Via Email | Email Address |
|------|----------------|-----------|---------------|
| Julie Reasonover, Attorney | | X | julie@jstillman.com |
| Michael Haynie, Attorney | | X | mhaynie@manierherod.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

8